Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 167 | **DATE** | 7/30/2004 |
| **CASE TITLE** | McCormack Baron Ragan vs. Peter Bately, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for partial summary judgment (26-1) On Access Denied's Counterclaim is granted. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 02 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | 21 |
| | Copy to judge/magistrate judge. | | |
| SLB | courtroom deputy's initials | 2004 JUL 31 PM 4:47 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

McCORMACK BARON RAGAN )
MANAGEMENT SERVICES, INC. )
)
    Plaintiff/Counter-Defendant, )
) No. 04 C 167
    v. )
) Judge George W. Lindberg
PETER BATELY and BATELY )
CONSTRUCTION, d/b/a ACCESS DENIED, )
)
    Defendants/Counter-Plaintiffs. )

**MEMORANDUM OPINION AND ORDER**

Before the court is plaintiff's motion for partial summary judgment as to defendants' breach of contract counterclaim. For the reasons stated below, the motion for partial summary judgment is granted.

**I. Factual Background**

The following facts are undisputed. Plaintiff McCormack Baron Ragan Management Services, Inc. ("McCormack Baron") manages the Ida B. Wells public housing complex in Chicago for the Chicago Housing Authority. Defendants Peter Bately and Bately Construction, doing business as Access Denied, (collectively "Access Denied") install and maintain security barriers on buildings.

In January 2001, McCormack Baron and Access Denied entered into a rental agreement, under which McCormack Baron agreed to rent security doors and metal window panels from Access Denied, to secure vacant units at the Ida B. Wells complex. A separate document stated the rental rate. According to that document, McCormack Baron would pay $360.00 per door and $180.00 per window panel for the first year of the agreement, and would pay a discounted

amount beginning in the second year, if the rental agreement "reflect[ed] a rental term equal to the number of years required for each discount."

Access Denied's security doors and window panels were installed at the Ida B. Wells complex pursuant to the agreement. During the first year of the agreement, Access Denied charged the non-discounted rental rate, as provided in the pricing document. In the second year of the agreement, Access Denied began charging McCormack Baron the discounted rate. However, in August 2002, after McCormack Baron made some late payments, Access Denied resumed billing at the full, non-discounted rate. Access Denied agreed to revert to the discounted rate in March 2003, following discussions with McCormack Baron regarding the account, but later resumed billing at the full rate.

In July 2003, Access Denied advised McCormack Baron that McCormack Baron owed $235,080.00 on the account. In October 2003, Access Denied began removing its equipment from the Ida B. Wells complex. In November 2003, Access Denied claimed that McCormack Baron owed $672,000.00 under the rental agreement.

On January 9, 2004, McCormack Baron filed this action, alleging that defendants had breached the rental agreement by charging the full amount rather than the discounted amount after the first year. McCormack Baron's complaint also seeks an equitable accounting. Defendants filed a counterclaim, alleging that McCormack Baron breached the rental agreement by failing to pay the rent on the equipment.[1] McCormack Baron's motion for partial summary judgment seeks a determination that McCormack Baron was only required to pay the discounted

---

[1] The counterclaim also seeks an order of replevin; the parties agree that this count is mooted by an agreed order that allows defendants to retrieve the equipment.

rate after the first year, and that McCormack Baron did not owe payments to Access Denied on certain invoices.

## II. Discussion

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

Access Denied first argues that McCormack Baron's motion should be stricken or denied because Federal Rule of Civil Procedure 56 does not permit a party to move for summary judgment on issues, rather than an entire claim. The court disagrees. Rule 56(d) allows the court to grant partial summary judgment on less than a whole claim. See Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., 313 F.3d 385, 391 (7th Cir. 2002), cert. denied, 124 S. Ct. 803 (2003). Accordingly, the court turns to the merits of McCormack Baron's motion.

### A. Rental Rate

McCormack Baron first urges the court to determine that, as a matter of law, the rental agreement entitled McCormack Baron to pay the discounted rate on all second- and third-year

3

equipment rentals. McCormack Baron argues that since the rental agreement automatically renewed after the first year, the rental rate was automatically reduced to the discounted rate starting in the second year.

As an initial matter, the court notes that the January 2001 agreement does not expressly provide for automatic renewal. However, in its answer, Access Denied admitted McCormack Baron's allegation that "[t]he initial term of the Agreement was one year, after which the Agreement automatically renewed for successive one-year terms." In addition, Access Denied does not dispute the identical statement in McCormack Baron's Local Rule 56.1 statement of material facts.

The pricing document that set the rental rate under the agreement provided: "To receive the [discounted rate] a rental agreement between both parties is required reflecting a rental term equal to the number of years required for each discount." According to Access Denied, this provision required McCormack Baron to affirmatively agree to use the equipment for two years in order to receive the discounted rate in the second year, and to agree to use the equipment for three years in order to receive the discounted rate in both the second and third years. McCormack Baron contends that the parties' automatically-renewing agreement satisfied this provision, and that no additional agreements were necessary to qualify for the discount.

The interpretation of a contract is a question of law to be determined by the court. Cromeens, Holloman, Sibert, Inc. v. AB Volvo, 349 F.3d 376, 394 (7th Cir. 2003). An unambiguous contract "speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence." Id. A contract is ambiguous only if the language used "is susceptible of different constructions when

4

read in its plain and ordinary meaning." Id. (quoting Althoff Indus., Inc. v. Elgin Med. Ctr., Inc., 420 N.E.2d 800, 803 (Ill. App. Ct. 2d Dist. 1981)).

The court finds that the provision in the pricing document that requires a rental agreement reflecting a rental term equal to the number of years required for each discount is ambiguous. It is unclear from the language of that provision whether it could be satisfied by the type of multi-year contract into which the parties entered, or whether it required McCormack Baron to affirmatively commit to a specific period of years for each equipment order.

Since the court has determined that the contractual provision at issue is ambiguous, the court may consider extrinsic evidence for the purpose of interpreting the parties' intent. It is undisputed that Access Denied charged McCormack Baron at the discounted rate starting in the second year of the contract. Invoices sent to McCormack Baron in the first half of 2002 described the charges as "[s]econd year pricing." Based on this evidence, the court concludes that the parties intended the January 2001 agreement to satisfy the provision in the pricing document requiring an agreement reflecting a rental term equal to the number of years required for each discount. Accordingly, McCormack Baron was entitled to pay the discounted rate beginning in the second year of the agreement.

The court next turns to the question of whether Access Denied was entitled to resume billing at the non-discounted rate due to McCormack Baron's late payments, as it did on August 15, 2002. The January 2001 agreement gave Access Denied the right to terminate the lease and retrieve the leased equipment in the event of McCormack Baron's default. In addition, the agreement provided that if any payment became overdue, all other invoices would immediately become payable, and that McCormack Baron would be required to pay the balance of its account,

plus collection costs and interest. The agreement did not permit Access Denied to revoke the discounted rate if McCormack Baron failed to make timely payments. Accordingly, McCormack Baron was entitled to pay the discounted rate, despite its late payments. The portion of McCormack Baron's motion for summary judgment that seeks a determination that McCormack Baron was entitled to the discounted rate is granted.

**B.     Invoices**

The court next turns to the portion of McCormack Baron's motion that seeks a determination that McCormack Baron did not owe payments to Access Denied on certain invoices. McCormack Baron asks the court to determine that, as a matter of law, McCormack Baron was not obligated to pay the amounts billed on Access Denied's invoices numbered AD0008 through AD0014, and AD0057.

McCormack Baron has offered evidence that it was not obligated to pay the amounts billed on invoices AD0013, AD0014, and AD0057. Access Denied neither disputes this evidence, nor responds to McCormack Baron's arguments relating to these invoices. Accordingly, the court determines that, as a matter of law, McCormack Baron was not required to pay the amounts billed on these three invoices.

The remaining five disputed invoices were dated July 26, 2001, and billed McCormack Baron for a total of $250,000.00. On August 24, 2001, Access Denied sent McCormack Baron a statement of account that indicated that payment of the $250,000.00 billed on these invoices was overdue. On October 18, 2001, McCormack Baron requested that Access Denied cancel the purchase orders corresponding to these invoices.

Following McCormack Baron's cancellation request, the four statements of account sent

by Access Denied between November 2001 and February 2002 listed the status of these invoices as "CANCELLED." The nine statements of account sent by Access Denied between March 2002 and March 2003 did not list these invoices at all. Access Denied later included the $250,000.00 for these purchase orders in the charges listed on its November 12, 2003 statement of account, and indicated that the equipment ordered was "awaiting installation." In fact, only slightly more than half of the equipment that had been ordered on the purchase orders corresponding to these disputed invoices was actually manufactured. The equipment that was manufactured pursuant to these purchase orders was either used to fill later McCormack Baron orders, or was rented to other Access Denied customers.

McCormack Baron argues that it is not obligated to pay these invoices because Access Denied cancelled the invoices, never manufactured all the equipment ordered, and eventually billed either McCormack Baron or other customers for the equipment that was manufactured. The January 2001 agreement does not expressly authorize McCormack Baron to cancel an order. Thus, McCormack Baron's position appears to be that by accepting McCormack Baron's cancellation request, Access Denied waived its right to assert breach of contract as to the five cancelled orders. Access Denied does not discuss waiver, but rather merely responds that it lost the ability to rent the equipment for a period of time, and is entitled to breach of contract damages to restore it to the position it would have had if McCormack Baron had not cancelled the orders.

"Waiver is the express or implied voluntary and intentional relinquishment of a known and existing right." Wolfram P'ship, Ltd. v. LaSalle Nat'l Bank, 765 N.E.2d 1012, 1025 (Ill. App. Ct. 1st Dist. 2001). Waiver may be implied by clear conduct inconsistent with an intent to

7

enforce such a right. Bank v. Truck Ins. Exch., 51 F.3d 736, 739 (7th Cir. 1995); Galesburg Clinic Ass'n v. West, 706 N.E.2d 1035, 1037 (Ill. App. Ct. 3d Dist. 1999). This doctrine "serves to prevent the waiving party from lulling another into a false belief that strict compliance with a contractual obligation will not be required and then suing for noncompliance." Wolfram P'ship, Ltd., 765 N.E.2d at 1026. The issue of waiver may be decided as a matter of law "[w]here there is no dispute as to the material facts and only one reasonable inference can be drawn therefrom...." Horbach v. Kaczmarek, 915 F. Supp. 18, 23 (N.D. Ill. 1996) (quoting Wald v. Chicago Shippers Ass'n, 529 N.E.2d 1138, 1147-48 (Ill. App. Ct. 1st Dist. 1988)), aff'd, 288 F.3d 969 (7th Cir. 2002).

Here, it is undisputed that for over two years after they were cancelled, Access Denied listed the five orders at issue as cancelled and made no indication that it intended to charge McCormack Baron for the orders. Indeed, Access Denied did not revive this charge until shortly after the billing dispute as to other equipment had reached such a level that Access Denied had started to remove its equipment from the Ida B. Wells complex. The court concludes that Access Denied's statements of account sent to McCormack Baron in the two years following the cancellation of the five orders clearly show that Access Denied intended to waive any right to damages for breach of contract relating to these orders. McCormack Baron is entitled to summary judgment in its favor as to the portion of Access Denied's breach of contract counterclaim relating to these orders.

**ORDERED:** Plaintiff McCormack Baron Ragan Management Services, Inc.'s Motion for Partial Summary Judgment [26-1] On Access Denied's Counterclaim is granted.

ENTER:

George W. Lindberg
Senior United States District Judge

DATED: **JUL 3 0 2004**